MELLOY, Circuit Judge.
Randy Gilooly filed an employment discrimination suit in federal court pursuant to Title VII and 42 U.S.C. § 1983, and under state law pursuant to the district court’s supplemental jurisdiction, against the Defendanb-Appellees (collectively, the “Appellees”). Gilooly appeals the district court decision granting summary judgment to the Appellees. We affirm in part and reverse and remand in part.
I.
Gilooly was employed by the Missouri Department of Health and Human Services, Section for Senior Services [Division of Aging] (hereafter “DoA”).[1] At the DoA, defendant Gladys Hood supervised Gilooly and defendants Jennifer Sutton and Betty Bolden. Effective March 12, 2001, Gilooly was granted a transfer from his position under Hood in Mississippi County to a similar position in Cape Girardeau County. Defendant Helen Edwards-Matthews was Gilooly’s supervisor at the new location. Defendant Bonnie Eulinberg was the regional manager for both counties in which Gilooly worked.
Before Gilooly’s transfer, during his exit interview, Gilooly told Hood that Sutton and Bolden engaged in conduct that made it necessary for him to transfer. Specifically, Gilooly alleged that Sutton was frequently around his desk and that she had said she was attracted to him. He also complained that Bolden made unannounced visits to his home. Gilooly admitted that he had a relationship with Bolden previously. Gilooly stated that personal problems between Bolden and him were making it difficult for him to perform his job. Gilooly said that he needed a transfer because Bolden and Sutton had become “overly dependent on him.” At the time of the exit interview, Gilooly did not file any sexual harassment complaint. During meetings with Hood, both Bolden and Sutton confessed to having relationships with Gilooly. Gilooly denied a current relationship with either woman.
On May 8, 2001, Gilooly and his girlfriend, Angie Decker, who was not an employee of the DoA, visited a client in a mental hospital. The visit was unauthorized because Gilooly had not obtained supervisor approval. During an inquiry about the visit, it was discovered that this was not Gilooly’s first unauthorized visit with the client. Gilooly had also given the client a can of pepper spray even though she was a known self-mutilator. Edwards-Matthews and Eulinberg recommended discipline for Gilooly’s misconduct.
On May 30, 2001, Gilooly wrote a reply to the disciplinary recommendation. In the reply, he alleged that the disciplinary recommendation was in retaliation for his report of sexual harassment during his exit interview, though he had never actually *737 filed a sexual harassment complaint. On July 6, 2001, defendant Karen Hoellering, a DoA human resources manager, issued a suspension letter to Gilooly. He was suspended without pay for five days for his unauthorized visit, giving the pepper spray, and his uncooperative attitude after the disciplinary report was issued. Hoel-lering also learned, but did not base her decision upon the fact, that Gilooly had exchanged personal emails on state time and equipment with at least eight women.
On July 12, 2001, Gilooly and his union representative met with Edwards-Matthew and Eulinberg regarding the suspension. On July 27, 2001, Gilooly filed a charge of discrimination with the Missouri Commission on Human Rights. On August 9, 2001, Gilooly filed a grievance review request alleging sexual harassment and unlawful retaliation in violation of Title VII. In his request, Gilooly alleged that Bolden and Sutton had engaged in a range of inappropriate conduct toward him. Specifically, he alleged that Sutton had hugged him in an inappropriate manner, distracted him from his work by visiting his desk, and made unwanted advances toward him. He also alleged that Bolden had made unannounced visits to his home and also distracted him from working. Defendant Sandra Lewis of the Office of Civil Rights of the Department of Social Services was charged with investigating Gilooly’s claims. On September 17, 2001, the Office of Civil Rights issued its report and did not support Gilooly’s allegations. On September 26, 2001, Gilooly’s administrative appeal of his suspension was heard and denied. On October 25, 2001, Gilooly was fired, effective November 7, 2001.
The termination letter stated that “[t]he reason for [Gilooly’s] dismissal [was] that [he] made false statements during the investigation and grievance hearing which followed [his] accusations against two former co-workers.” The letter identified several areas where it was alleged that Gilooly had deceived investigators. First, it alleged that Gilooly had falsely denied “personal relationships beyond friendship” with several former co-workers. In the letter, “Jennifer,” “Betty,” and “ClaraE” are identified as three women who alleged having had relationships with Gilooly, but with whom Gilooly had either denied or refused to answer whether he was involved in a sexual manner. Second, the termination letter stated that Gilooly’s allegation that “Jennifer” and “Betty” had prevented him from doing work by distracting him was false because they had told investigators that they had actually been doing Gilooly’s work. Third, eyewitness accounts of particular events allegedly contradicted Gilooly’s statements. For each of these allegations, the termination letter did not cite any documentation beyond the testimony of other employees and witnesses. The letter also recounted the events that led to Gilooly’s suspension.
On November 26, 2001, Gilooly appealed his termination to the Personal Advisory Board, but it upheld the termination. On January 13, 2002, Gilooly filed a second complaint with the Missouri Commission on Human Rights. In the second complaint, Gilooly alleged that his firing was retaliatory. Again, the commission did not find Gilooly’s allegations to be credible.
Gilooly then filed a sexual harassment lawsuit in federal court that is the basis for this appeal. The district court granted summary judgment for the defendant on all claims. On appeal, Gilooly argues that the district court erred in finding that he had failed to establish a prima facie case of: 1) hostile work environment; 2) disparate treatment; and 3) unlawful retaliation. We address each of Gilooly’s arguments in turn.
*738 II.
The standard of review for a grant of summary judgment is de novo. Allen v. City of Pocahontas, Ark., 340 F.3d 551, 554-55 (8th Cir.2003). To succeed against a motion for summary judgment in a case like this one, the plaintiff must present sufficient evidence to create a genuine issue of material fact. Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 425 (8th Cir.1997). In reviewing the judgment of the district court, we must view all evidence “ ‘in the light most favorable to the non-moving party.’ ” Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 478 (8th Cir.2004) (quoting Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir.2003)).
III.
Gilooly argues that the Appellees were not entitled to summary judgment as to his hostile work environment claim. To establish a claim of hostile work environment, a plaintiff must show that: (1) he or she was a member of a protected group; (2)he or she was subjected to unwelcome harassment in the workplace; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Magna v. Smithville R-II, 324 F.3d 975, 979 (8th Cir.2003); Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 965 (8th Cir.1999).
Because we agree with the district court that Gilooly is unable to prove any material fact question as to the fourth element, we need not discuss the other elements. To establish the fourth element, a plaintiff must be prove that the harassment was “so severe or pervasive as to alter a term, condition, or privilege of employment.” Scusa, 181 F.3d at 967. The conduct at issue must not be “merely rude or unpleasant.” Alagna, 324 F.3d at 980. A plaintiff must establish harassment that is “so intimidating, offensive, or hostile that it ‘poisoned the work environment.’ ” Scusa, 181 F.3d at 967 (quoting Scott v. Sears, Roebuck & Co., 798 F.2d 210, 214 (7th Cir.1986)). A plaintiff must be able to show that “the workplace [was] permeated with discriminatory intimidation, ridicule, and insult.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations omitted).
In the present matter, there is no evidence of conduct rising to the level of “severe or pervasive” harassment. At most, Gilooly has alleged that he was uncomfortable with Bolden and Sutton’s advances toward him. He does not cite any instances of conduct by them that could rise to the level required by Title VII. Gilooly’s claim that there were frequent desk visits, unannounced visits to his home, and that Bolden and Sutton were “overly dependent” on him do not constitute sexual harassment under existing law. While Gilooly may have had a belief that such conduct constituted sexual harassment, it is not sufficient as a matter of law. Accordingly, we affirm the judgment of the district court as to the hostile work environment claim.
IV.
Gilooly also appeals the decision of the district court regarding his disparate treatment claim. This claim relates to the May 2001 suspension for the unauthorized visit to the client in a mental hospital. To establish a disparate treatment claim, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his her duties; (3) he or she suffered an adverse employment action; and (4) “cir *739 cumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently.” Jacob-Mua v. Veneman, 289 F.3d 517, 521-22 (8th Cir.2002).
In this case, Gilooly argues that Bolton lied about her sexual relationship with him, later changed her account of events, but was not similarly punished. Further, he argues that Sutton was accused of similar confidentiality infractions, but was only reprimanded.
Since we agree with the district court that Gilooly did not offer any material facts relevant to the fourth element, we need not discuss the other elements here. To meet the fourth element in a disparate treatment claim, a plaintiff must show that other employees outside of the protected group were allegedly treated more favorably and were “similarly situated in all relevant respects.” Pope v. ESA Servs., 406 F.3d 1001, 1009 (8th Cir.2005). In this case, Sutton and Bolton did not engage in the same conduct as Gilooly. There is no evidence to suggest that Sutton and Bolton violated confidentiality, conflict of interest, and reporting rules. As a result, the cumulative accusations against Gilooly were more severe, and he has failed to identify any similarly situated employees of the opposite sex who were treated preferentially. See Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir.2001) (finding that employees were not similarly situated because of different degrees of misconduct).
V.
Gilooly also argues that his termination and suspension were impermissible retaliation actionable under Title VII. Title VII makes it unlawful for an employer to discriminate against an employee for “oppos[ing] any practice made unlawful by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.” 42 U.S.C. § 2000e-3(a). To prove a retaliation claim, a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. Rheineck v. Hutchinson Tech., Inc., 261 F.3d 751, 757 (8th Cir.2001). The defense may rebut a plaintiffs claim by advancing a legitimate, “non-retaliatory reason for the adverse employment action.” Id. If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination. Id. To establish a retaliation claim, a plaintiff need not succeed on the underlying harassment claims. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.1997).
Here, Gilooly alleges that his suspension and termination were two separate adverse employment actions. Regarding his suspension, we agree with the district court that Gilooly presented insufficient evidence of causation to establish a claim of retaliation.
Turning to his termination, the district court concluded that there was no causal link between the reporting of sexual harassment and Gilooly’s discipline and termination. We disagree.
To prove a causal connection under the third element, a plaintiff must prove that an employer’s retaliatory motive played a part in the adverse employment action. Kipp v. Missouri Highway & Transp. Comm’n., 280 F.3d 893, 896-97 (8th Cir.2002). “[E]vidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to prove *740 a causal connection.” Id. at 897 (internal quotation marks omitted).
The district court found that Gilooly’s termination was caused by his unauthorized visit to a client with a non-Do A employee. However, because those responsible for his firing expressly denied that the previous incident was the justification for his termination, and that the termination letter received by Gilooly describes his conduct during the investigation as the basis for his firing, we disagree with the district court’s conclusion that the “plaintiff has not presented evidence that his termination was for any reason than for violation of policy.” The termination letter clearly stated as reasons for termination, Gilooly’s conduct and deception during the sexual harassment investigation. The employer relied on a letter from a state agency investigator who alleged that Gilooly had lied during the investigation. There is no evidence that indicates Gilooly had been caught in a clear, unequivocal lie, but, rather, the evidence shows that the investigator had found Gilooly to be less credible than the other witnesses. Taking the termination letter in a light most favorable to Gilooly and for the reasons discussed below, we conclude that this case gives a necessary inference of retaliatory motive.
Because we believe Gilooly has met the elements of a retaliation claim for purposes of surviving a motion for summary judgment, the question we must address is whether, given the facts of this case, Gilooly was fired for legitimate, non-discriminatory reasons. It cannot be the case that any employee who files a Title VII claim and is disbelieved by his or her employer can be legitimately fired. If such were the case, every employee could be deterred from filing their action and the purposes of Title VII in regards to sexual harassment would be defeated. However, it also cannot be true that a plaintiff can file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about sexual harassment. To do so would leave employers with no ability to fire employees for defaming other employees or the employer through their complaint when the allegations are without any basis in fact.
These scenarios represent two extremes. Differentiating individual cases between the two extremes is a difficult endeavor at the summary judgment stage. Nonetheless, we previously addressed this issue and found that the reasons for firing must be “sufficiently independent from the filing of the complaint to constitute legitimate and nonretaliatory reasons for discharge.” Womack v. Munson, 619 F.2d 1292, 1297 (8th Cir.1980). Further, questions related to the very substance of the investigation are “not sufficiently independent” and therefore, within the scope of the protected activity. Id. Specifically, an investigator’s “independent determination of truth or falsity of [the plaintiffs] allegation ... [can]not legally be grounds for discharge.” Id. at 1298. However, if the false statements are “not part of the protected activity,” then they can be legitimate reasons for termination. Sweeney v. City of Ladue, 25 F.3d 702, 704 (8th Cir.1994) (holding that a related third party’s lies during an investigation were not protected activity).
In this case, the investigator’s belief that Gilooly was lying was the basis for the DoA’s decision to fire Gilooly. According to the termination letter, the belief that Gilooly was lying was founded solely on the statements of other employees and witnesses.[2] The letter contained no inde *741 pendently verifiable evidence that contradicted Gilooly’s allegations. Without such additional corroboration, the statements in the termination letter amount to little more than a description of conflicting stories with the employer disbelieving Gilooly’s version of the events.
This judgment of assessing witness credibility is normally the province of a fact-finder at a sexual harassment trial. Allowing the employer’s investigation to essentially short-circuit the retaliation claim before it begins is antithetical to the design of Title VII. Had the investigator found a clearer record of deception and detailed the basis for such findings, a court could find that the firing was not for protected conduct. However, in this case, the question is largely undeveloped and best left to a fact-finder to decide. As a result, we conclude the district court erred in granting summary judgment as to Gilooly’s retaliation claim concerning his termination.
VI.
For the foregoing reasons, we affirm as to Gilooly’s hostile work environment and disparate treatment claims. However, we reverse and remand concerning the retaliation claim as to Gilooly’s termination and any claims to which the district court may exercise supplemental jurisdiction.

. The name of the agency in question has undergone several changes and has been given different names by the parties and courts involved in the matter. The parties’ briefs refer to the agency as the Department of Health and Senior Services whereas the caption of this Court uses Department of Health and Human Services. For purposes of this opinion, we use the full name identified in the caption of the court and adopt the abbreviation used by the district court.

. It may be argued that independent corroboration can be provided by testimony from *741 neutral non-parties. Assuming that to be true, that is not our case. Co-workers who were not the subject of the complaint were interviewed. However, their statements tended to corroborate some of Gilooly's allegations, such as the claim that both Bolden and Sutton would sit at Gilooly’s desk. The "contradictions” dealt with minor, inconsequential details. The eyewitness testimony as related in the termination letter does not rise to the level of independent corroboration.