# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2218

_____

| | | |
|---|---|---|
| E. Dexter Hughes and Sharmell W. Relerford, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Ortho Pharmaceutical Corporation and Johnson & Johnson, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 15, 1999

Filed: May 27, 1999

_____

Before RICHARD S. ARNOLD, WOLLMAN[1], Circuit Judges, and TUNHEIM,[2] District Judge

_____

TUNHEIM, District Judge.

_____

[1]The Honorable Roger L. Wollman succeeded the Honorable Pasco M. Bowman as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999.

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

E. Dexter Hughes and Sharmell W. Relerford (collectively "plaintiffs") appeal from the district court's[3] order granting defendants' motion for summary judgment on their race discrimination claims under the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981. We affirm.

**I.**

Defendant Ortho Pharmaceutical Corporation ("Ortho"), a subsidiary of defendant Johnson & Johnson, Inc., hired Relerford and Hughes in 1983 and 1993, respectively. Relerford and Hughes are African American. During their employment with Ortho, they were the only African American sales representatives in the company's St. Louis, Missouri division. At all times relevant to their claims, Kathleen Brown Carlyon was their district manager and direct supervisor. Carlyon interviewed and hired Hughes, and she terminated both plaintiffs on December 7, 1994, as part of a company-wide reduction-in-force ("RIF").

During the first quarter of 1994, Hughes' sales were below the national average in every category. In July 1994, he received a letter stating that he was ineligible to participate in Johnson & Johnson's stock compensation plan because of his inadequate sales performance. Carlyon placed Hughes on formal probation in August, after determining that his sales were below the national average in all product categories.

Hughes points out that he was recognized at a district sales meeting for his strong sales of an Ortho product (Terazol) during the first part of 1994. He also contends that Carlyon's realignment of his sales territory in June and July 1994 took from him over eighty high potential physician customers. Defendants respond, however, that Hughes' sales territory was realigned so that he could concentrate his

---

[3]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

efforts on a smaller number of customers. Also, it appears undisputed that sales results were measured by market share based on the customers in a given territory and not by gross sales per representative.

At the end of the third quarter of 1994, Hughes ranked thirty-seventh out of 520 Ortho sales representatives in a company-wide contest known as the "Top Achievers Contest." The contest ranked sales representatives on a weighted computation of market share and market increase, rather than overall sales performance. Forty percent of the weight attributable to market share increase was for a single product. In November, Carlyon, who had no knowledge of the contest until after she terminated Hughes, extended Hughes' probation because he remained below the national average in all sales categories except one. He was still on probation when Carlyon terminated him on December 7.

Relerford received stock options at the end of 1993 for her sales performance with Ortho. After the first quarter of 1994, however, Ortho informed her that her market share was disappointing. Carlyon placed Relerford on formal warning status in August 1994, after two prior written warnings regarding market share performance and problems with selling skills. After the second quarter, Relerford ranked near the bottom of Ortho's sales representatives with regard to market share for oral contraceptives, a major product group. In October, Carlyon repeated the formal warning and told Relerford that if she failed to improve, she would be placed on probationary status. Relerford's sales figures with regard to oral contraceptives did show some improvement in the third quarter, but she remained on formal warning status until her termination on December 7.

Plaintiffs' terminations were part of a company-wide RIF that resulted in four terminations in the St. Louis division. The other two terminated representatives are Caucasian. All four had received formal warnings or were on probation at the time. Relerford testified that Carlyon told her at the time of her termination that she was

being discharged due to overlapping sales territories. In response to Relerford's subsequent request for a service letter, Carlyon wrote "You were discharged from employment with [Ortho] due to a realignment and reduction of sales territories." Carlyon went on to state that the "decision regarding which sales representatives to separate from employment was based primarily upon performance. Due to your poor past performance, you were one of the individuals discharged in the process." In her deposition, Carlyon testified that Relerford was terminated because she was "either on probation or had received a written warning."

In January 1995, Carlyon hired an African American as a sales representative, who assumed at least part of Relerford's territory. Carlyon initially had recruited this new representative in August 1994. At that time, however, she had informed the recruit that there were no openings and that Ortho was interviewing to keep a pool of applicants available in case openings emerged. Carlyon testified that she did not become aware that Ortho was planning to downsize until December 1994.

Plaintiffs filed suit in district court alleging race discrimination in violation of Section 1981. In a detailed opinion, the district court granted defendants' motion for summary judgment, finding that Hughes and Relerford had failed to establish a prima facie case of discrimination and had failed to offer evidence that would support an inference that defendants' proffered reason for terminating them as part of a company-wide RIF was pretextual. Plaintiffs appealed, arguing that the district court's determination was erroneous.

## II.

We review the district court's grant of defendants' motion for summary judgment *de novo*. *See, e.g.*, *Roxas v. Presentation College*, 90 F.3d 310, 315 (8th Cir. 1996). We will affirm a grant of a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material

fact exists and that the moving party is entitled to judgment as a matter of law. *See, e.g.*, *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8ᵗʰ Cir. 1994).

The order and allocation of proof in cases in which there is no direct evidence of discrimination is governed by the three-step burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505-11 (1993). This framework applies to claims brought under Section 1981. *See Roxas*, 90 F.3d at 315. A Section 1981 plaintiff has the initial burden of establishing a prima facie case of race discrimination. *See id.* Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant employer, who must articulate a legitimate, non-discriminatory reason for the adverse employment action. *See id.* at 316. Once the employer articulates such a reason, the plaintiff bears the burden of proving that the proffered reason is merely a pretext for discriminatory animus. *See id.* At all times, the plaintiff retains the ultimate burden of proving discrimination on the basis of race. *See id.* (quoting *Garner v. Arvin Indus., Inc.*, 77 F.3d 255, 257 (8ᵗʰ Cir. 1996)).

Here, the district court concluded that Hughes and Relerford had failed to meet their initial burden of establishing a prima facie case of discrimination. There is no dispute that this is a RIF case. To establish a prima facie case of discrimination in the RIF context under Section 1981, plaintiffs must 1) show that they were within a protected group, 2) show that they met applicable job qualifications, 3) show that they were discharged, and 4) produce some additional evidence that race was a factor in their termination. *See, e.g.*, *Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 483-84 (8ᵗʰ Cir. 1997) (citing cases).

While the district court assumed that Hughes and Relerford had satisfied the first three elements of their prima facie case, it found that they failed to satisfy the fourth element because they produced no additional evidence that race played a role in

Carlyon's decision to terminate them. We agree with the district court's conclusion for the reasons set forth in its opinion.

Defendants offered uncontroverted evidence that all four sales representatives Ortho terminated as part of the RIF were on formal warning or probationary status. Although Hughes offered evidence that his sales performance improved or was strong with regard to certain products, he has produced no evidence that his overall sales performance warranted his removal from probation. On the contrary, defendants' evidence that his overall performance was problematic remains uncontroverted. Furthermore, there is no evidence that Carlyon knew about his standing in the "Top Achiever Contest," or that, even if she had known, this would have altered her decision, which was based on different performance criteria. Likewise, while Relerford showed some improvement in her sales of oral contraceptives, she has offered no evidence to refute defendants' contention that her overall performance was deficient. Plaintiffs therefore have not raised a fact dispute with regard to whether their performance justified their remaining on formal warning or probationary status, and supported their selection for the RIF.

The district court also correctly concluded, in the particular circumstances of this case, that the fact that plaintiffs were the only African American sales representatives in the district at the time they were terminated cannot serve as additional evidence that race was a factor in their termination. Ortho treated them the same as the two Caucasian salespersons that were on formal warning or probationary status, and they have offered no evidence of other, similarly situated salespersons who were treated better or differently. Moreover, there is no dispute that Carlyon hired another African American sales representative shortly after she discharged Hughes and Relerford. Plaintiffs have offered no evidence to support their theory that Carlyon hired this employee to cover up her discriminatory animus, and such a scheme is implausible, particularly because Carlyon had taken initial steps to recruit the employee prior to the

RIF. Thus, plaintiffs have not offered additional evidence that race was a factor in their termination and therefore have not established a prima facie case of discrimination.

Moreover, even if plaintiffs could establish a prima facie case of discrimination, the district court correctly concluded that they have not offered evidence that would support an inference that defendants' proffered reason for terminating them -- as part of a company-wide RIF – was pretextual. Although they argue that Carlyon used the RIF as an opportunity to discharge them, plaintiffs have come forward with no evidence that the RIF itself was pretextual. Their contention that Carlyon's allegedly changing explanation for terminating Relerford creates a fact dispute with regard to pretext is unpersuasive. The Court finds Carlyon's different articulations of why she terminated Relerford are not in conflict. All of her explanations are consistent with her written statement that after Ortho had decided to reduce its sales territories, she used performance criteria -- formal warning or probationary status -- to determine who should be terminated. Likewise, as set forth above, plaintiffs have not raised a genuine fact dispute as to whether Carlyon legitimately placed them on, and then did not remove them from, formal notice or probationary status. Accordingly, plaintiffs have failed to meet their burden of creating a genuine issue of material fact on the question of pretext and on the ultimate issue of whether racial animus motivated their termination.

## III.

For the reasons enumerated above, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.