96 F.Supp.2d 926 (2000)
Cassandra Ann JOHNSON, Plaintiff,
v.
MISSOURI GOODWILL INDUSTRIES, Defendant.
No. 4:99CV218CDP.
United States District Court, E.D. Missouri, Eastern Division.
April 28, 2000.
*927 Cassandra Ann Johnson, Berkeley, MO, plaintiff pro se.
Paul N. Venker, C. Wayne K. Davis, Armstrong Teasdale, LLP, St. Louis, MO, for Missouri Goodwill Industries, defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendant's motion for summary judgment. Plaintiff has not responded to the motion and her time for doing so has expired. For the reasons set forth below, defendant's motion will be granted.
Pro se plaintiff Cassandra Ann Johnson is an African-American woman and a former employee of defendant Missouri Goodwill Industries. She brought this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., alleging that defendant: (1) subjected her to a hostile work environment based on sexual harassment from a female security guard; (2) subjected her to discriminatory treatment on the basis of *928 her race; (3) failed to promote her because of her race; and (4) terminated her because of her race. Defendant now moves for summary judgment, arguing, inter alia, that plaintiff cannot establish a prima facie case with respect to her sexual harassment, disparate treatment and failure-to-promote claims, and that she has failed to exhaust her administrative remedies with respect to her discriminatory termination claim. Plaintiff has not responded to defendant's motion, and the Court will therefore accept defendant's evidence as undisputed for purposes of this motion, as plaintiff has made no attempt to contest that evidence in any way.

I. Undisputed Factual Background

Plaintiff began working for defendant in December of 1992 as a part-time job coach, assisting and training defendant's mentally retarded and developmentally disabled clients who worked at different jobs within the community. After about a year, plaintiff was elevated to a full-time job coach position. From sometime in 1995, until her last day of active employment on January 27, 1998, plaintiff worked as a retention specialist. In this position, instead of training, plaintiff was responsible for finding jobs for clients and monitoring their progress on those jobs. Plaintiff spent between 70% to 75% of her time out of the office, visiting job sites, monitoring clients and meeting with employers. On January 28, 1998, plaintiff took a medical leave of absence from work. Thereafter, she was granted several extensions of her medical leave based on recommendations from her doctor. On August 10, 1998, plaintiff's approved leave expired, but she neither returned to work nor submitted any requests for additional leave from her doctor. On September 4, 1998, plaintiff submitted to defendant appropriate long-term disability forms and a note from her doctor requesting that her leave again be extended until November 2, 1998. Defendant temporarily extended plaintiff's leave, but on October 30, 1998, it terminated her employment.
On March 11, 1998, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that defendant had discriminated against her by moving her department from offices into shared cubicles in the hall. On June 9, 1998, plaintiff amended her charge to include an allegation of sexual harassment. On October 12, 1998, plaintiff requested notice of her right to sue from the EEOC. The EEOC issued a right-to-sue letter on November 16, 1998.
Much of the other evidence regarding the specific claims in plaintiff's complaint is gleaned from excerpts of plaintiff's deposition, which were submitted by defendant in support of its motion for summary judgment, and from the affidavits submitted by defendant's employees.

Plaintiff's Sexual Harassment Claim
Plaintiff alleges that she was verbally and sexually harassed by Vicki Brown, a female security guard stationed at the rear entrance to defendant's facility. She testified that her problems with Brown first started when she noticed that Brown had a "nasty disposition" and was "militant" toward her. She testified that there were two different entrances to defendant's facility which were regularly used by employees a front post and a back post, and Brown was always stationed at the back post. Plaintiff contends that whenever she left the building with other employees through Brown's post, Brown would be nice to the men in the group, but would have a bad attitude toward some of the women, particularly young black women. Plaintiff testified that Brown did not seem to have any problems with older black women or white women.
Plaintiff further testified that her first actual confrontation with Brown involved an incident where Brown searched her purse. She claims that as she was entering the building through Brown's post on July 29, 1997, Brown instructed her to remove all the items from her purse so that she could inspect the contents of her purse. Plaintiff testified that she was aware of defendant's security policy that required guards to inspect any purses, *929 bags or other containers brought into or carried out of the building and that required employees to wear their ID badges at all times. She asserts, however, that while it was customary for security guards to look into employees' bags, she felt that this particular inspection was sexual harassment because Brown had never required anyone else to remove items from their bags and did not even require men to open their briefcases, let alone remove items from them. Plaintiff further asserts that she knew that Brown had never subjected other employees to this type of inspection because during a meeting concerning security issues, no one else mentioned to her that Brown had done so. Plaintiff ultimately admitted that she was not always present at the entrance with Brown and that, other than her own observations, she has no knowledge of what Brown required of other employees during her inspection of their belongings. Plaintiff testified that the July 27th incident was the only time that Brown requested that she remove items from her purse and that Brown never made any verbal statements to her which she considered sexually harassing and never touched her in any manner.
Plaintiff further asserted at her deposition that she felt harassed by Brown because Brown constantly questioned her about wearing and displaying her employee identification badge. Plaintiff testified that while she seldomly wore her ID badge on her person, she always carried it attached to her purse, portfolio or whatever she was carrying at the time. Plaintiff testified that Brown would harass her about seeing her ID badge even when she had witnessed her exit the building and stand in the smoking area in clear view. Plaintiff claims that on one occasion, Brown even rubbed her own breasts to indicate to plaintiff where she should wear her ID badge. At that point, plaintiff asserts "that's when I knew she was gay."
On July 31, 1997, plaintiff wrote a memorandum to Pat Schenk, defendant's director of administration, complaining about Brown's alleged conduct. Thereafter, a series of memoranda were exchanged between Schenk and plaintiff regarding plaintiff's complaints. On August 13, 1997, plaintiff filed a grievance against Brown regarding the allegedly harassing conduct. As a result, defendant conducted several meetings between plaintiff, Schenk, Brown, plaintiff's supervisors, defendant's human resources director, and ultimately defendant's Chief Executive Officer. At the meetings, Brown denied plaintiff's allegations. Plaintiff testified that although defendant made several attempts to resolve her complaints, the situation was never resolved to her satisfaction.
Finally, plaintiff contends that she felt sexually harassed because Brown would always step into her personal space and stand close to her "like she was [her] boyfriend." She also asserts that Brown's appearance was sexually harassing because she "looked like a man."

Plaintiff's Racial Discrimination Claims
Plaintiff alleges that she was subjected to "an ongoing practice" of racial discrimination when her department, which she claims is 98% black, was "singled out" and treated less favorably than other departments. As evidence of this discrimination, plaintiff claims that her supervisor, Lee Cimicata, verbally criticized her department, the Supported Employment Program (SEP), about improperly completing their mileage reimbursement forms. Thereafter, Cimicata circulated to them a sample of a completed reimbursement form containing fictitious information, presumably to demonstrate the proper method for completing the form. In the space provided for the employee's name, Cimicata wrote "John Doe;" in the space for the employee's program, she wrote "Circus;" and for consumer names she wrote "Assist Me" and "Coach Me." Plaintiff asserts that the document was racially discriminatory because Cimicata referred to the SEP department as a circus.
Plaintiff also claims that she was discriminated against when her department *930 was required to attend early, Monday morning meetings conducted by Cimicata. Plaintiff contends that the meetings were unnecessary, unorganized, had no agendas or validity, and were inconvenient for members of the SEP department because they mostly worked offsite. Plaintiff further claims that she was discriminated against when Pat Schenk, the director of administration, refused to let employees from the SEP department park on the street in front of defendant's facility and eventually had the City of St. Louis erect no parking signs in that area. Plaintiff claims that the parking restrictions were inconvenient for employees in her department because a large portion of their work occurred offsite and when they came into the office at various times during the day, all the other parking spaces would be taken. In an affidavit submitted by defendant in support of its motion for summary judgment, Schenk attests that the parking restrictions were imposed to prevent employees and clients from blocking access to defendant's facility, which had been a problem before the no parking signs were posted.
Plaintiff further claims that she was discriminated against when the employees in her department were relocated from offices to cubicles in a "hallway" and "major thoroughfare." Plaintiff testified at her deposition that all the employees in the SEP department were moved to different locations. She testified that only "professional staff" in the SEP department had offices before the reorganization. According to plaintiff, the professional staff included every position in the SEP department except job coach. She claims that of the approximately fifteen professional staff, approximately 4-5 were either assigned to positions outside of the SEP department or not offered positions at all, and that the rest were moved to cubicles. Plaintiff testified that a total of eight professional staff members were relocated to cubicles, and of the eight, three were white and five were black.
In an affidavit submitted by defendant in support of its motion for summary judgment, Cimicata attests that plaintiff's department was moved into cubicles because of defendant's expansion of its staff and the lack of space to accommodate the growing workforce. Cimicata further attests that the decision was made to relocate the SEP department because: (1) they work offsite a large percent of the time, and therefore employees in that department used their offices less than employees who were required to work onsite; (2) the offices were needed to comply with certain accreditation requirements; and (3) unlike employees in other departments, the SEP department was not part of an interdisciplinary team, and therefore there was no need for them to be located in close proximity to other team members. Cimicata's affidavit asserts that the racial mix of persons moved to cubicles and persons moved to offices was approximately the same. Defendant also provided a list showing that six blacks and five whites were moved to cubicles, and that ten blacks and seven whites were moved to offices.
As further evidence of racial discrimination, plaintiff asserts that Cimicata sabotaged her work, stated that she needed to go back to school, and required her to show her monthly reports to four different people who were not familiar with the reports. She also alleged that defendant failed to promote her on the basis of her race. With respect to this claim, plaintiff testified that she applied for three promotions during her employment with defendant full-time job coach, retention specialist and a public relations position. She further testified that she received both the full-time job coach and retention specialist positions and that she did not receive the public relations position because it required a college degree, which she did not have. Finally, plaintiff claims that defendant eventually terminated her on the basis of her race.

II. Discussion

In determining whether summary judgment should issue, the Court views the *931 facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). If the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant is unable to make a showing sufficient to establish the existence of an element essential to its case. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).
Employment discrimination on the basis of race and sex is prohibited by Title VII. In the absence of direct evidence of discrimination, Title VII claims are analyzed under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Saint Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Hughes v. Ortho Pharmaceutical Corp., 177 F.3d 701, 704 (8th Cir.1999). Under the burden-shifting analysis, plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Hughes, 177 F.3d at 704. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse treatment. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant articulates such a reason, the plaintiff must then demonstrate that defendant's reason is a pretext for discrimination. Id.; Hughes, 177 F.3d at 704. The burden of proving discrimination remains on the plaintiff at all times. St. Mary's Honor Center, 509 U.S. at 515-16, 113 S.Ct. 2742. The plaintiff must do more at the pretext stage than discredit defendant's reason; the plaintiff must show the defendant's articulated reason is a pretext for discrimination. Id.; see also Ryther v. KARE 11, 108 F.3d 832, 837 (8th Cir.) (en banc), cert. denied, 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir.1995).
To avoid summary judgment, a plaintiff alleging discrimination must present evidence that, when viewed in its entirety, (1) creates a fact issue as to whether defendant's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse treatment. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996); Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir.1995). Evidence of pretext alone is not sufficient to avoid summary judgment. Ryther, 108 F.3d at 837.

A. Sexual Harassment
To prevail on a hostile work environment type sexual harassment claim, plaintiff must establish that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 965 (8th Cir.1999); Callanan v. Runyun, 75 F.3d 1293, 1296 (8th Cir.1996). Defendant argues, inter alia, that plaintiff has failed to establish that Brown's conduct was based on plaintiff's sex or that the conduct was sufficiently severe and pervasive to support a claim for sexual harassment.
*932 The Court agrees. "Whether harassing conduct constitutes discrimination based on sex is determined by whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Scusa, 181 F.3d at 965 (citations omitted). With the exception of plaintiff's allegations that Brown rubbed her own breasts and frequently stepped into her personal space like her boyfriend, none of the conduct for which plaintiff complains was based on her sex. Plaintiff conceded in her deposition that Brown never made any verbal statements to her which she considered sexually harassing and never touched her in any manner. Although plaintiff contends that Brown treated her differently than she treated men who worked in the building, she testified in her deposition that there was really no "rhyme or reason" as to whom Brown treated favorably and whom she treated badly. In fact, plaintiff testified that Brown only had a negative attitude toward some women in the building, but not others. Thus, plaintiff's own testimony indicates that Brown's attitude toward her was based on something other than the fact that she is a woman. See Hill v. St. Louis University, 123 F.3d 1114, 1120 (8th Cir. 1997) (Title VII prohibits discrimination based on certain discreet classifications, but does not prohibit employment actions based on factors such as personal or personality conflicts between employees).
Similarly, plaintiff offers no evidence to indicate that Brown's inspection of her purse or the alleged harassment regarding her ID badge was based on her sex. It is undisputed that defendant's policy required all employees to wear their ID badges at all times and permitted security guards to inspect employees' belongings. Plaintiff nevertheless contends that the policies were inconsistently applied to her because of her sex. She bases this assertion on her belief that Brown never asked anyone else to remove items from their bags and does not require men to open their briefcases. Plaintiff admitted in her deposition, however, that she was not always present at the entrance when Brown interacted with other employees and that, other than her own observations, she has no actual knowledge of whether Brown has, in fact, required others to remove items from their bags or required male employees to open their briefcases. Her conclusions are therefore based on mere speculation, and cannot establish that Brown's conduct was based on her sex. For similar reasons, plaintiff has failed to establish that Brown's conduct with respect to the ID badge was based on plaintiff's sex, especially given the fact plaintiff admits that she very seldomly wore her ID badge on her person as the policy requires.
Furthermore, even if plaintiff could establish that Brown's conduct was based on her sex, none of the alleged conduct was severe enough to support plaintiff's sexual harassment claim. To establish a hostile working environment, the alleged harassment must be so severe and pervasive as to alter a term, condition, or privilege of employment. Scusa, 181 F.3d at 966; Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 573 (8th Cir.1997). Plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule and insult. Id. In determining whether the alleged conduct is sufficiently severe or pervasive, courts should consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Scusa, 181 F.3d at 967. The requisite showing requires both an objective and subjective belief that the employee's work environment was offensive, i.e., that a reasonable person would find it hostile or abusive. Id.
Plaintiff's allegations fail to meet this standard. Again, plaintiff concedes that Brown never made any verbal statements to her which she considered sexually harassing and never touched her in any manner. The instance where Brown required plaintiff to remove items from her *933 purse during a routine inspection and the incident where Brown allegedly rubbed her own breasts to show plaintiff where she should wear her ID badge were isolated incidents that are, under the circumstances of this case, insufficient to amount to severe and pervasive conduct. See Scusa, 181 F.3d at 967 (unless extremely serious, isolated incidents will not amount to discriminatory changes in the terms or conditions of employment); Kimzey, 107 F.3d at 573 (more than a few isolated incidents are required to show that offending conduct is sufficiently severe and pervasive). Plaintiff testified that both of these incidents occurred only once. She points to absolutely nothing in the record that would bring these isolated incidents within the requisite level. They were neither frequent, severe nor physically threatening.
Similarly, none of the other allegedly harassing conduct relied on by plaintiff was sufficiently severe and pervasive to be actionable. According to plaintiff, she spends between 70% to 75% of her time away from the office. Her deposition testimony establishes that during the limited time that she was in her office, she was not required to work with or around Brown and that she could have easily avoided contact with Brown in most instances by using a different entrance. Under these circumstances, a reasonable person would not have found her work environment hostile or abusive. Cf. Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 737 F.Supp. 1070, 1082-83 (E.D.Mo.1990) (holding that harassing conduct not sufficiently severe and pervasive where conduct would not have affected the work environment of a reasonable person). As a result, plaintiff has failed to establish that Brown's conduct was sufficiently severe and pervasive so as to permit an actionable claim under Title VII. Defendant's motion for summary judgment on plaintiff's sexual harassment claim will be granted.

B. Racial Discrimination (Disparate Treatment)
Plaintiff's allegations of racial discrimination appear to allege a claim of disparate treatment. To summarize, plaintiff claims that she was subjected to discrimination based on unwarranted criticism from her supervisor regarding how plaintiff's department filled out certain forms; circulation of a document referring to the department as a circus; the requirement that plaintiff's department attend early, Monday morning meetings; relocation of plaintiff's department from offices to cubicles; and placement of parking restrictions on employees in plaintiff's department. Plaintiff further claims that she was discriminated against when her supervisor told her that she needed to return to school, sabotaged her work, and required her to show her monthly reports to four different people. Defendant argues, and the Court agrees, that to the extent that plaintiff alleges a disparate treatment claim of racial discrimination, she has failed to establish any disparity in the treatment of similarly situated employees. Additionally, defendant argues that even if plaintiff can establish a prima facie case, she has failed to demonstrate that its legitimate nondiscriminatory reasons for its conduct were pretextual.
To prevail on a disparate treatment claim, plaintiff must prove that she was treated less favorably than similarly situated employees outside of her protected group. Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 910 (8th Cir.1999); see also EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 951 (8th Cir.1999) (elements of disparate treatment claim alleging a pattern or practice of racial discrimination). The undisputed evidence in this case establishes that plaintiff's department consisted of both black and white employees. Thus, the employees with whom plaintiff was similarly situated were white employees within the SEP department. See Kline v. City of Kansas City Fire Dep't, 175 F.3d 660, 670-71 (8th Cir. *934 1999) ("similarly situated" means similarly situated in all relevant respects); Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir.1994) (same).
It is undisputed that white employees in plaintiff's department were subjected to the same allegedly discriminatory conduct as plaintiff. In fact, plaintiff's deposition testimony establishes that the entire department was criticized by the supervisor about improperly completing the reimbursement forms; the document allegedly referring to the department as a "circus" was circulated to the entire department; the entire department was required to attend the Monday morning meetings; defendant prohibited all of its employees from parking in designated areas; and white as well as black professional staff in the SEP department were moved into cubicle offices. With respect to plaintiff's allegations that Cimicata sabotaged her work and required her to show her monthly reports to four different people, plaintiff has failed to present any evidence whatsoever to support these claims or to establish that white employees in her department were treated differently or more favorably. Plaintiff's allegations are simply insufficient to prove a prima facie case of disparate treatment as she has failed to show that defendant treated her less favorably than similarly situated employees outside of her protected group. As a result, the Court need not reach defendant's argument regarding its asserted legitimate nondiscriminatory reasons for its actions. Defendant's motion for summary judgment on this claim will be granted.
To the extent that plaintiff attempts to allege a disparate impact claim of racial discrimination, her claim still fails as a matter of law as she does not offer statistical evidence sufficient to raise an inference that defendant's alleged practice of "singling out" her department had a disparate impact on defendant's black employees. See Langlie v. Onan Corp., 192 F.3d 1137, 1140 (8th Cir.1999) (to make a prima facie case of disparate impact, plaintiff must offer statistical evidence sufficient to show that defendant's actions caused significant adverse effects on the members of her protected group because of their membership in that group); Lewis v. Aerospace Comm. Credit Union, 114 F.3d 745, 750 (8th Cir.1997) (same), cert. denied, 523 U.S. 1062, 118 S.Ct. 1392, 140 L.Ed.2d 651 (1998); MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1058 (8th Cir.1988) (statistical evidence for a disparate impact claim must be stronger than circumstantial evidence to support a disparate treatment claim). Therefore, defendant would be entitled to summary judgment on this basis as well.

C. Racial Discrimination (Failure to Promote)
Plaintiff alleges that defendant failed to promote her on the basis of her race. To establish a prima facie case for failure to promote, plaintiff must show that: (1) she was a member of a protected group; (2) she was qualified and applied for an available position with defendant; (3) she was rejected for the position; and (4) a similarly situated employee, not part of the protected group received the promotion. Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1110 (8th Cir.1998).
As with her other claims, plaintiff's deposition testimony demonstrates that she cannot establish essential elements of her failure-to-promote claim. Plaintiff testified at her deposition that she received two out of the three promotions for which she applied and that she did not receive the third, a public relations position, because the position required a college degree, which she did not have. Therefore, even assuming that plaintiff can satisfy the first and fourth elements of her claim, she fails to establish that she was rejected for any promotion for which she was qualified. As a result, defendant is entitled to summary judgment on this claim.

D. Discriminatory Termination
Finally, defendant moves for summary judgment on plaintiff's discriminatory termination *935 claim, arguing that plaintiff failed to exhaust her administrative remedies with respect to this claim. Specifically, defendant argues that plaintiff's discriminatory termination claim is not like or reasonably related to the claims presented in her administrative charge. The Court agrees.
A plaintiff bringing a discrimination claim must exhaust her administrative remedies before filing suit in federal court. Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir.1996); Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir.1996); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). To meet the exhaustion requirement, a plaintiff must timely file a charge of discrimination with the EEOC and the appropriate state administrative agency setting forth the facts and the nature of the charge. Id. A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are "like or reasonably related to" the substance of her administrative charge. Williams, 21 F.3d at 222. Furthermore, the scope of a suit brought under Title VII may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination. Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir.1994) (internal quotations and citations omitted). The purpose of the exhaustion requirement is to accommodate the EEOC's investigatory and conciliatory role and to provide the employer with notice of the charge. Williams, 21 F.3d at 223.
In the "particulars" section of her administrative charge form, plaintiff alleged that:
My department is 98% Black-American. On or about January 2, 1998 my department was moved from our offices to the hallways into cubicles. These cubicles are unstable, crowded and two per person. Caseworkers and employment technicians, all but one were white, were moved into our former offices. Five of our offices were left vacant. The square footage of the cubicles is considerably smaller than the officers. All the caseworkers were White-Americans. On December 12, 1997, we met with the Rehabilitation Director, Human Resource Director and Respondent's CEO. They heard our complaint and did nothing.
I believe this move was racially motivated as it subjected myself a Black-American to different terms of working conditions from these of White-Americans.
It is indisputable that plaintiff's charge did not allege any facts regarding her termination or any type of continuing, ongoing discrimination. Instead, she alleges only a discrete instance of racial discrimination directed at her department. This highly specific incident of racial discrimination is separate and distinct from plaintiff's claim of discriminatory termination. Plaintiff was not terminated until October 30, 1998, more than seven months after she filed her initial charge and nearly ten months after the office relocation incident. Other than the fact that plaintiff alleges that both incidents were motivated by racial discrimination, there is absolutely no connection between the two incidents. See Snyder v. Saberliner Corp., No. 4:97CV2584 LOD, 1999 WL 1211759, at *9 (E.D.Mo. Dec.14, 1999) (there is no automatic connection between an allegation of race discrimination and a claim of discriminatory discharge). Therefore, the Court concludes that plaintiff's discriminatory discharge claim is not like or reasonably related to the claims addressed in her administrative charge. Cf. Boge v. Ringland-Johnson-Crowley Co., 976 F.2d 448, 451 (8th Cir. 1992) (discriminatory layoff not like or reasonably related to a separate and later alleged discriminatory termination). As a result, defendant's motion for summary judgment on this claim will be granted on this claim as well.[1]
*936 Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment [# 18] is granted.
NOTES
[1] On July 23, 1999, the Court denied defendant's motion to dismiss, which raised this same issue. Upon reconsideration, however, the Court agrees with defendant and now alters its earlier ruling as stated above. See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir.1995) (district court has the inherent power to reconsider or modify an interlocutory order any time before entry of a judgment); Viehweg v. Mello, 5 F.Supp.2d 752, 757 (E.D.Mo.1998) (same).