# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1627WM

_____

Vera Sims,                                *

                                   *

           Appellant,                *

                                   *   On Appeal from the United

       v.                             *   States District Court

                                   *   for the Western District

                                   *   of Missouri.

Health Midwest Physician Services   *

Corporation, a Missouri Corporation,   *

                                   *

           Appellee.               *

_____

Submitted:  September 15, 1999

Filed:  November 10, 1999

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Vera Sims brought this action for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Missouri Human Rights Act, Mo. Ann Stat. § 213.010 et seq.  She advanced two theories of liability for sexual harassment:  (1) that her employer, Health Midwest Physician Services Corporation, was vicariously liable for harassment perpetrated by one of her supervisors, the physician for whom she worked; and (2) that Health Midwest was

liable on a negligence theory because it knew or should have known of the harassment and failed to take appropriate remedial action. She also claimed that the defendant retaliated against her for complaining about the harassment. The District Court granted summary judgment for the defendant on all claims. The central issue on appeal is whether someone in authority at Health Midwest knew about the claim of harassment during the relevant time period. We hold that Ms. Sims presented sufficient evidence, at the summary-judgment stage, to create a genuine issue of material fact on this question. She is therefore entitled to a trial on her vicarious-liability and negligence theories. As to retaliation, however, we agree with the District Court and affirm its dismissal of this aspect of the complaint.

## I.

In reviewing a grant of summary judgment, we apply the same standard used by the District Court: whether there is a genuine issue of material fact, and whether the moving party is entitled to a judgment as a matter of law. We briefly outline the facts of the case, resolving all genuine factual disputes and drawing all reasonable inferences in favor of Ms. Sims.

Vera Sims, the plaintiff, is a licensed practical nurse employed by defendant Health Midwest. In 1988, Ms. Sims began employment at Midwest Internal Medicine Associates (MIMA), a clinic acquired by Health Midwest in 1992. She was the nurse for Dr. Richard Harlow, who began employment at MIMA in 1984. Ms. Sims presented evidence to the District Court that Dr. Harlow sexually harassed her from May of 1993 until August of 1995. After this first period of sexual harassment, the harassment ceased for over a year, mainly due to Ms. Sims's marriage and her leave of absence from work for surgery. The plaintiff returned to work in September of 1996. Ms. Sims stipulated that she is not seeking recovery for any sexual harassment by Dr. Harlow that occurred before September 26, 1996. The plaintiff testified in her

deposition that after she returned to work, a second period of sexual harassment began in October of 1996. App. 535.

Ms. Sims presented evidence that some of her co-employees discussed Dr. Harlow's inappropriate conduct towards her, including unwanted touching. One of the employees who heard, or was engaged in, such discussions was Michelle Aman. Ms. Aman was a receptionist at MIMA prior to 1994, but was promoted to Front Office Coordinator in January of 1995. In February of 1995, Kay Hensley, MIMA clinic manager, held a staff meeting and announced Ms. Aman's promotion. During this meeting, Ms. Hensley told MIMA employees that because she was supervising three clinics and could be at MIMA only about one day a week, they should address any problems to Ms. Aman when she, Ms. Hensley, was away from the clinic.

As we have noted, the relevant time period is between September 26, 1996, and January 15, 1997. We shall detail later in this opinion the evidence relevant to the question whether anyone in authority at Health Midwest knew about claims of harassment during this time period. Events finally came to a head on January 15, 1997. On that day, Dr. Harlow approached Ms. Sims and told her to come to his office at 12:30 that afternoon because he believed that she needed a massage and he wanted to give her one. On the same day, Ms. Sims told Ms. Aman that she could not hide from Dr. Harlow anymore, and "It's moved on from the kissing to now, you know, he's putting his penis on my butt and I'm in a panic and I've got to make him stop." App. 642. Ms. Sims asked Ms. Aman to help her set Dr. Harlow up so that he would become so embarrassed that he would leave her alone. Ms. Sims's plan was for Ms. Aman to enter Dr. Harlow's office five minutes after she had entered it at 12:30 p.m. and catch them in a sexually compromising position. As planned, Ms. Sims went to Harlow's office and engaged in sexual contact with him, all the while awaiting Ms. Aman's entry into the room to catch them. Ms. Aman tried to enter the office as planned; however, she could not open the door because Dr. Harlow had locked it.

After the failure of this "set-up" incident on January 15, Ms. Sims asked Ms. Aman to speak to Dr. Harlow. Ms. Aman replied that she was too scared to speak to him, but she did report Ms. Sims's complaint of sexual harassment to Ms. Hensley the next day. It is undisputed that Ms. Hensley did not receive actual knowledge of Dr. Harlow's behavior until January 16, 1997. After Ms. Aman reported Dr. Harlow's behavior, Ms. Hensley informed vice-president Debra Hartman of Ms. Sims's complaint of sexual harassment. Ms. Hensley arranged for a meeting for herself, Ms. Hartman, and Ms. Sims to discuss the complaint the following Tuesday, January 21, 1997. After the January 21st meeting, Ms. Hensley and Ms. Hartman advised Dr. Harlow that a complaint of sexual harassment was filed by an employee, and Health Midwest began an investigation into Ms. Sims's complaint. No more sexual harassment by Dr. Harlow toward Ms. Sims took place.

On January 28, 1997, Dr. Harlow asked Ms. Sims about her complaint. After this confrontation, Ms. Sims called Ms. Hensley and told her that she could no longer work with Dr. Harlow. Ms. Sims agreed to transfer to another Health Midwest clinic and was assigned to Dr. Mary Ellen McGinnis. On February 20, 1997, Health Midwest president Steve Johns issued a formal letter of reprimand to Dr. Harlow. Upon receipt of the written reprimand, Dr. Harlow resigned, effective May 31, 1997.

II.

Ms. Sims first argues that the District Court erred in ruling that Health Midwest could not be vicariously liable for Dr. Harlow's sexual harassment of her. Ms. Sims contends that Health Midwest is liable because Dr. Harlow was her supervisor with immediate or successively higher authority over her, and Health Midwest did not satisfy its burden of proof on its affirmative defense as a matter of law.

Health Midwest can be subject to "vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or

successively higher) authority over the employee." Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257, 2270 (1998). Furthermore, mere "intersexual flirtation" is not enough to violate the statute. Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1003. "The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Ibid.

The District Court concluded that Ms. Sims presented sufficient facts to overcome summary judgment as to whether Dr. Harlow was her supervisor for purposes of holding Health Midwest vicariously liable for his conduct. We agree. Yet despite this determination, when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. Burlington, 118 S. Ct. at 2270. We agree with the District Court that Ms. Sims's evidence failed to demonstrate that she suffered any tangible employment action that would preclude application of Health Midwest's affirmative defense.

A conclusive determination of whether Health Midwest proved its affirmative defense and is entitled to judgment as a matter of law cannot be made until we first address two issues: (1) whether Ms. Aman was delegated the authority to deal with sexual-harassment claims, and (2) whether Dr. Harlow's treatment of Ms. Sims, during the relevant time period (October of 1996 to January 15, 1997), was brought to the attention of Ms. Aman.

The resolution of these two issues is important to the determination of whether an issue of material fact exists on the affirmative defense. If the Health Midwest sexual-harassment policy required employees to report sexual harassment to their supervisor (who Ms. Sims admitted was Ms. Hensley); if Ms. Hensley delegated her authority to receive sexual-harassment complaints to Ms. Aman with the requirement that Ms. Aman report the complaints to Ms. Hensley or take other appropriate action;

and if the sexual harassment was brought to the attention of Ms. Aman during the relevant time period, but Ms. Aman failed to act; then there are issues of material fact as to whether Health Midwest is liable for Ms. Aman's inaction. An employer may be responsible for the consequences of sexual harassment if information about the harassment came "to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have . . . a duty to pass on the information to someone within the company who has the power to do something about it. . .." Young v. Bayer Corp., 123 F.3d 672, 674 (7th Cir. 1997); Torres v. Pisano, 116 F.3d 625, 636-38 (2nd Cir. 1997).

Health Midwest's sexual-harassment policy stated, in part:

If you have a complaint of sexual harassment, you should discuss the matter with your supervisor. If for some reason you feel you cannot discuss the situation with your supervisor, contact the Employment Manager. You may use the Complaint Procedure to bring a complaint of sexual harassment to the attention of management. You will not receive unfavorable treatment for presenting a complaint of sexual harassment.

App. 188, 193. It also provided:

Employees who become aware of sexual harassment against another employee should bring the matter to the attention of his/her supervisor or the Director of Human Resources for HMPSC.

App. 195.

As to the issue of delegated authority, the District Court concluded that the record could not support a finding that Ms. Aman had been given the authority to act on sexual-harassment claims or that employees were instructed to file official

-6-

complaints with Ms. Aman. We disagree. In Ms. Aman's handwritten notes, she stated that she "had an obligation to report the incident as [Sims's] acting supervisor," App. 155; and in her deposition, Ms. Aman testified that as on-site supervisor, she had a responsibility to go to Ms. Hensley. App. 300. Ms. Aman testified that she had supervisory responsibilities with regard to Ms. Sims, App 306; that she was referred to as the "on-site supervisor," App. 292; that she believed it was her responsibility to try to defuse the situation with Ms. Sims and Dr. Harlow, App. 293; and that she was to report "any problem" to Ms. Hensley, App. 281. In addition, Ms. Hensley admitted that if Ms. Aman had knowledge that Ms. Sims was being sexually harassed, it would have been Ms. Aman's responsibility to bring the complaint to her attention, as Ms. Aman was her "eyes and ears" in the office. App. 432. Ms. Hensley also testified that she had a meeting with the MIMA employees and told them that Ms. Aman would be the on-site person to deal with problems for patients and employees, App. 427, and that it was within Ms. Aman's authority to take care of employee problems, App. 428. This evidence is enough to create a genuine issue of fact on the question whether Ms. Aman was set up as a point person to accept sexual-harassment complaints, in order to channel the complaints to Ms. Hensley or otherwise handle them. "If the employer has structured its organization such that a given individual has the authority to accept notice of a harassment problem, then notice to that individual is sufficient to hold the employer liable." Williamson v. City of Houston, Tex., 148 F.3d 462, 467 (5th Cir. 1998).

Despite our determination that Ms. Sims presented a genuine issue of material fact as to Ms. Aman's delegated authority, we must also examine whether Ms. Sims presented sufficient evidence to overcome summary judgment as to whether Dr. Harlow's alleged sexually harassing behavior was brought to the attention of Ms. Aman during the relevant time period.

The plaintiff admitted that she did not go to Ms. Aman during the relevant period of October 1996 through January 15, 1997, and say "I want to file a grievance, I want to file a complaint against him, it's just wrong what he's doing." App. 117-118. Our

examination, however, does not end there. Notification of sexual harassment to an employer need not come solely from the victim of the harassment for knowledge to be imputed to the employer. See Varner v. National Super Markets, Inc., 94 F.3d 1209, 1213 (8th Cir. 1996), cert. denied, 519 U.S. 1110 (1997) (there is no significance in the fact that sexual harassment was reported by a co-worker of the victim, rather than by the victim herself). The holding of Young v. Bayer Corp., supra, 123 F.3d at 674, that employer liability could attach if information of the harassment had "come to the attention of" someone who is reasonably believed to have a duty to pass on the information does not require that the victim of the harassment be the source of the information. Health Midwest's own sexual-harassment policy provided that any employee who "becomes aware of sexual harassment against another employee" should bring the matter to the attention of his or her supervisor. App. 195.

Connie Shepard, a co-worker of Ms. Sims, testified that she spoke with Ms. Aman about Dr. Harlow and Ms. Sims more than two times during the relevant time period. App. 504. Ms. Shepard testified that two months before January 15, 1997, Ms. Sims told her that Dr. Harlow was "offering to give her back rubs, that he had tried to kiss her in his office, the same things that had repeatedly happened over the years," and Ms. Shepard went to Ms. Aman and told her of Dr. Harlow's behavior of "coming on to" Ms. Sims and that it needed to stop. App. 507. Ms. Shepard testified, "I told her, I said, 'Michelle, this has got to stop. It's hurting everybody in the office. You know, it's got to stop.' And she agreed. But, you know, she also pointed out that we had never really seen anything." Id. Additionally, Linda Regan, a MIMA receptionist, testified in her deposition that Ms. Aman engaged in discussions about Ms. Sims and Dr. Harlow during the relevant time period of October of 1996 through January of 1997, App. 475; and after Ms. Sims returned from surgery in September of 1996, Ms. Shepard asked Ms. Aman, "Is Dr. Harlow bothering Vera, is that why she's acting this way?" App. 472. This evidence would support a finding that Health Midwest, through its agent Ms. Aman, was aware of Dr. Harlow's behavior during the relevant time period.

Having resolved these issues, we now determine whether Health Midwest proved its affirmative defense and is entitled to judgment as a matter of law on Ms. Sims's vicarious liability claim. Health Midwest must prove two elements in its affirmative defense:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Burlington, 118 S. Ct. at 2270; Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2293 (1998).

As to the first element of the defense, the District Court stated that "[i]f Aman's knowledge is imputed to defendant, then the Court cannot state as a matter of law that defendant's response to the alleged harassment was adequately prompt and reasonable so as to grant summary judgment in favor of defendant." App. 779. We agree. Because there are material issues of fact on the first element of the defense, it is not necessary that we address the second element. We reverse the District Court's grant of summary judgment on Ms. Sims's vicarious-liability claim, because there are genuine issues of fact regarding Ms. Aman's role and whether her knowledge of harassment can be imputed to Health Midwest.

### III.

Ms. Sims next argues that the District Court erred in granting summary judgment on her negligence claim because she presented evidence sufficient to overcome summary judgment as to whether Health Midwest, through Michelle Aman, had actual knowledge of Dr. Harlow's sexual harassment of her during the relevant period and

failed to take immediate and appropriate action to end the harassment prior to Ms. Aman's finally reporting it to Ms. Hensley on January 16, 1997. The question is whether the employer knew or should have known of the harassment and failed to remedy it. If authorized agents with a reporting duty (or persons reasonably believed to have such a duty) acquire knowledge of sexual harassment, then the corporation acquired such knowledge. See Young v. Bayer Corp., 123 F.3d 672, 674-75 (7th Cir. 1997). Because Ms. Sims presented an issue of fact as to Ms. Aman's knowledge that Ms. Sims was being harassed, we reverse the District Court's grant of summary judgment on her negligence claim.

IV.

Ms. Sims next argues that the District Court erred in granting summary judgment on her claim of retaliation. Ms. Sims maintains that she was subjected to the following adverse employment actions: (1) she was forced to transfer to another clinic; (2) she was not permitted to return to MIMA on the days when her assigned physician worked at MIMA; (3) she received verbal counseling for making a personal phone call during work and a written warning about another personal call; and (4) she was marked down on her performance evaluation. In order to establish a claim of Title VII retaliation, Ms. Sims must show participation in a protected activity, subsequent adverse action by the employer, and a causal connection between the two. The employment action must have had a materially adverse impact on the terms or conditions of employment.

We agree with the District Court that Ms. Sims failed to show any materially adverse employment action. Ms. Sims voluntarily transferred into an identical position with the same salary, title, and overall responsibilities. As the District Court pointed out, Ms. Sims's transfer was not even listed as a retaliatory act in her amended complaint. The fact that she was told that she could not visit MIMA with her new doctor does not rise to the level of Title VII retaliation. Although one of her evaluations was marked down, it was later raised by Dr. McGinnis. In addition, the

written warning Ms. Sims received was given only after she had been verbally counseled about making personal phone calls during work hours. Furthermore, Health Midwest provided legitimate, non-retaliatory reasons for its actions, and Ms. Sims offered no substantial evidence to rebut those reasons as being pretextual. Therefore, Ms. Sims's Title VII retaliation claim fails as a matter of law.

## V.

For the reasons stated above, we reverse the District Court's grant of summary judgment on Ms. Sims's vicarious-liability and negligence claims and affirm the summary judgment on the Title VII retaliation claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.