109 F.Supp.2d 1116 (2000)
Jessica L. ANDERSON, Plaintiff,
v.
DILLARD'S INC., Defendant.
No. 4:99CV00821 ERW.
United States District Court, E.D. Missouri, Eastern Division.
July 31, 2000.
*1117 *1118 David M. Heimos, Heimos Law Office, Clayton, MO, for plaintiff.
Michael P. Burke, Timothy C. Mooney, Jr., Bryan Cave LLP, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court on Defendant Dillard's Inc.'s Motion for Summary Judgment [document #32] and Defendant Dillard's Inc.'s Motion to Strike the Affidavit of David M. Heimos [document #40].
In her Complaint, Plaintiff Jessica Anderson brings two counts each of sex discrimination and retaliation against Defendant, alleging that Defendant failed to properly resolve harassment that was the basis for a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Missouri Human Rights Act ("MHRA"), R.S. Mo. § 213.010.[1]

I. STATEMENT OF GENERAL RELEVANT FACTS

Viewing the facts of this case in the light most favorable to Plaintiff, the Court sets forth the following facts:
Plaintiff alleges that she was hired by Defendant on July 10, 1998, while Defendant alleges that Plaintiff was hired on July 7, 1998. During Plaintiff's employment with Defendant, the store manager of Dillard's was Rick Arlan ("Arlan"). Both parties agree that Defendant originally *1119 hired Plaintiff to work at the Dillard's store at the Jamestown Mall as a sales associate. Shortly after Plaintiff started her job at Dillard's, she became acquainted with Jerika Bateman. Bateman, a co-worker, would try to discuss sexual matters with Plaintiff. Plaintiff told Bateman that she was uncomfortable with Bateman discussing sexual matters with her, but Bateman continued to do so. On October 18, 1998, Plaintiff became a sales associate in the Cosmetics Department at the Elizabeth Arden counter. In November 1998, while Plaintiff was working in Cosmetics, Defendant promoted Bateman to the position of Area Sales Manager of the Cosmetics and Lingerie Department. Plaintiff alleges that Bateman became her direct supervisor at the end of November 1998, while Defendant claims that Bateman became her direct supervisor in December 1998. Plaintiff alleges that shortly after assuming this new position, Bateman began to pursue a non-platonic relationship with Plaintiff.
Specifically, Plaintiff alleges that Bateman frequently talked about her and her husband's sex life, asked Plaintiff if she wanted to join in sex orgies, "threesomes," and other sexual acts, and asked Plaintiff if she wanted to watch pornographic movies. In addition, Plaintiff claims that Bateman repeatedly touched her buttocks and her breasts. Plaintiff claims that on December 30, 1998, Bateman asked Plaintiff if she and her husband wanted to stay with Bateman and her husband in a hotel room for New Year's Eve and have a "big orgy." Additionally, during Bateman's tenure as her direct supervisor, Plaintiff claims that Bateman told Plaintiff she would have to perform oral sex on her to get a raise. Further, Plaintiff alleges that on January 8, 1999, when Plaintiff and her husband came to work to get her paycheck, Bateman approached them and commented on what they could do in a pornographic movie together.
On January 15, 1999, Arlan provided Plaintiff with a Final Improvement Notice regarding eight alleged tardies she had accumulated. Plaintiff indicated in her response to Defendant's statement of uncontroverted facts that she did not recall whether she was late to work on any of these days. On January 26, 1999, Plaintiff was absent from work and upon her return brought a note from a doctor excusing her absence. On January 28, 1999, Plaintiff went to Arlan's office and handed him a letter, which informed him that Bateman had made inappropriate comments to her and had touched her in an inappropriate fashion. Plaintiff claims that once Arlan received the letter, he told Plaintiff that things would be handled within the hour. On January 29,1999, Plaintiff alleges that she had to go back to Arlan because nothing had been done to solve the problem; to the contrary, Defendant alleges that Arlan was the one to initiate the second meeting. Both parties agree that on January 29, 1999, Arlan met with Kathy Fitzgerald ("Fitzgerald")[2] and Plaintiff to discuss their handling of the complaint. Defendant alleges that on the same day Arlan also had a meeting with Fitzgerald and Bateman. Defendant does not contest that Bateman admitted in this meeting with Arlan that there was some factual basis for the charges Plaintiff was making against her. After Plaintiff's reporting of harassment, Plaintiff claims that Bateman retaliated against her through her demeanor, her actions and her body language. On January 31, 1999, Plaintiff did not show up for her scheduled shift or provide a doctor's note for her absence.
On February 4, 1999, Arlan met with Plaintiff regarding her allegations of sexual harassment. Plaintiff and Defendant do not agree on the exact discussion that took place in the meeting. The parties agree *1120 that Plaintiff reported that Bateman had not made any further sexual comments to her and had not sexually harassed her in any fashion since she had been disciplined. Plaintiff claims that she told Arlan and Fitzgerald that she thought she should not have to work for Bateman anymore. Plaintiff also alleges that Arlan and Fitzgerald stated that nothing could be done to resolve her allegations that Bateman was retaliating against her or Plaintiff's desire not to work for Bateman. On February 5, 1999, Plaintiff was absent from her scheduled shift. Plaintiff claims that on February 7, 1999, Bateman was trying to pick a fight and make Plaintiff look like the "bad guy." On the same day, Plaintiff was called into Fitzgerald's office at the request of Bateman. It is not disputed that Debora Rees, an Assistant Area Sales Manager, was in the office with Bateman when Plaintiff received a verbal warning. However, Defendant contends that this meeting was not a formal disciplinary action against the Plaintiff, while Plaintiff alleges that Bateman indicated at this meeting that the next time Plaintiff was disrespectful to Bateman she could be fired.
On February 9, 1999, in a meeting with Arlan, Plaintiff was given a letter which indicated that Plaintiff needed to provide the proper medical documentation to support her absences from work on January 31, 1999 and February 5, 1999. The letter indicated that Plaintiff would be given one week to provide Defendant with medical documentation supporting her absences. Plaintiff never provided Defendant with medical documentation for these absences. Consequently, Plaintiff was terminated. Plaintiff and Defendant contest when and why Plaintiff was terminated. Plaintiff claims that she was effectively terminated on February 9, 1999, in retaliation for her sex discrimination claim, while Defendant claims that Plaintiff was terminated on February 18, 1999, for violating the company's attendance policy.

II. SUMMARY JUDGMENT STANDARDS

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action.'" Id. at 327, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 1).
In order to obtain summary judgment, the moving party must demonstrate "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party carries this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rest on allegations or denials in the pleadings, but must "come forward with `specific facts showing that there is a genuine issue for trial.'" Id. at 587, 106 S.Ct. 1348 (quoting Fed. R. Civ. P. 56(3)).
In analyzing summary judgment motions, the Court is required to view the facts in a light most favorable to the nonmoving party, and must give the nonmoving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, this Court is required to resolve all conflicts in favor of the nonmoving party. Robert Johnson Grain Co. v. Chemical Interchange Co., *1121 541 F.2d 207, 210 (8th Cir.1976). The trial court may not consider the credibility of the witnesses or the weight of the evidence. White v. Pence, 961 F.2d 776, 779 (8th Cir.1992).

III. ANALYSIS

As an initial matter, the Court considers Defendant's motion to strike the affidavit of David Heimos. In his affidavit, Heimos states that he has personal knowledge of Exhibits 1, 3, and 4, which accompany Plaintiff's response to Defendant's motion for summary judgment. Heimos declares that Exhibit 1, the Notice of Resignation of Salena Robinson, a fellow employee of Plaintiff's, was provided to Heimos by Plaintiff and provided to Plaintiff by Robinson. Heimos also states that Exhibits 3 and 4 are bate-stamped documents provided to him during discovery by Defendant's counsel.
Defendant asserts that Heimos's affidavit, which he submitted after serving Defendant with Plaintiff's opposition to summary judgment, does not cure the defects to the authenticity of Plaintiff's exhibits, does establish any personal knowledge of the documents, and does not overcome the hearsay statements contained in the documents. For the following reasons, the Court agrees with Defendant that both Heimos's affidavit and the exhibits it purports to support, must be struck.
Documents supporting or opposing summary judgment must be properly authenticated. See Fed. R. Civ. P. 56(e). "To be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir.1989); see 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2722 at 382 (3d ed. 1998). Rule 56(e) requires that an affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Carmona v. Toledo, 215 F.3d 124, 2000 WL 767873, at *6 (1st Cir. Jun.16, 2000); see also Williams v. Evangelical Retirement Homes of Greater St. Louis, 594 F.2d 701, 703 (8th Cir.1979) (noting that Rule 56(e) requires, inter alia, that affidavits supporting or opposing summary judgment be made on personal knowledge). Where an affidavit does not meet this standards, it is subject to a motion to strike. McSpadden v. Mullins, 456 F.2d 428, 430 (8th Cir.1972). The Court finds that Heimos has no personal knowledge of the evidence which Plaintiff seeks to submit through the contested exhibits. Simply noting that Robinson gave Plaintiff a copy of her Notice of Resignation or that Plaintiff's counsel received documents from Defendant during discovery does not indicate Heimos's personal knowledge of their authenticity. Heimos is clearly not a person through whom these exhibits could be admitted into evidence. Additionally, these documents are hearsay and, in their present form, would be inadmissible. Because Heimos's affidavit does not comply with the requirements of Rule 56(e), the Court shall grant Defendant's motion to strike it. Id. (finding that district court should have granted plaintiff's motion to strike affidavit not made from personal knowledge but based on an incorporated memorandum which was inadmissible hearsay).
The Court's finding that Heimos's affidavit is insufficient also precludes its consideration of Plaintiff's Exhibits 1, 3, and 4. Plaintiff has offered no other means by which these documents might be authenticated. See Lumiere (Rights) Ltd. v. Baker & Taylor, 116 F.3d 484, 1997 WL 303244 (9th Cir.1997) (noting that proper foundation for a summary judgment exhibit might be laid by the attachment of either an affidavit or a deposition). Therefore, the Court shall not consider Plaintiff's Exhibits 1, 3, or 4 in evaluating the motion for summary judgment before it. See Carmona, *1122 215 F.3d at 132-33 (holding that court could not properly give any credence to a purported copy of an investigation file unsworn and uncertifiedwhich was unaccompanied by an affidavit which complied with Rule 56(e)); Hill v. Baltimore City Dep't of Social Services, 141 F.3d 1158, 1998 WL 188632 (4th Cir.1998) (refusing to consider medical documents submitted by plaintiff which were neither properly authenticated nor provided directly by the medical doctors); Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir.1980) (finding that records attached to affidavit but not certified as required by Rule 56(e) were not properly considered by district court). Having so concluded, the Court now proceeds to examine the merits of Defendant's motion for summary judgment.

A. Plaintiff's Claim of Sex Discrimination
Section 703(a) of Title VII prohibits an employer from firing or discriminating against any individual with respect to their compensation, terms, conditions or privileges of employment because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). "The phrase `terms, conditions or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Specifically, there are two forms of sexual harassment, quid pro quo sexual harassment and hostile work environment sexual harassment. See Meritor, 477 U.S. at 65, 106 S.Ct. 2399. "Cases based on threats which are carried out are referred to often as quid pro quo cases, as distinct from bothersome attentions or sexual remarks that are sufficiently severe or persuasive to create a hostile work environment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). None of Bateman's alleged threats were ever carried out on Plaintiff. Since Plaintiff's claim involves only unfulfilled threats, it should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct. Ellerth, 524 U.S. at 752, 118 S.Ct. 2257. "When the workplace is permeated with `discriminatory intimation, ridicule and insult,' that is `sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).
To avoid summary judgment on her hostile work environment claims, Plaintiff must establish each of the elements of such a case: (1) plaintiff is a member of a protected class; (2) plaintiff was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of her employment. Hocevar v. Purdue Frederick Co., 216 F.3d 745, 749 (8th Cir.2000); Phillips v. Taco Bell Corp., 83 F.Supp.2d 1029, 1032 (E.D.Mo.2000).
The Court believes that the evidence presented in this case is sufficient to raise a factual dispute as to whether Plaintiff suffered sexual harassment. First, in accord with the standard discussed supra, the Court finds that Plaintiff has established that she was a member of a protected class. Second, the Court finds that Plaintiff has established that she was subject to unwelcome sexual harassment. "[P]plaintiff must indicate by her conduct that the alleged harassment was unwelcome." Hocevar, at 749. Plaintiff claims that she tried to ignore Bateman's sexual talk and told Bateman that she felt uncomfortable with it. Plaintiff testified that she never discussed her sexual life around the store and that no other employees discussed *1123 these matters with Plaintiff. Since Plaintiff told Bateman that she was uncomfortable with this sexual talk and Plaintiff never engaged in the conduct complained about,[3] the Court believes that there is adequate evidence to support Plaintiffs claim that these remarks and acts were unwelcome sexual harassment.
Third, the Court finds that the record contains sufficient evidence that the alleged harassment was based on Plaintiff's sex. Bateman's alleged sexual harassment included a variety of sexual comments and touching of Plaintiff's buttocks and breasts. In Phillips, the court held that defendant's squeezing of plaintiffs breast and the rubbing of her buttocks was sufficient evidence to demonstrate that the harassment was based on plaintiff's sex. Phillips, 83 F.Supp.2d at 1033. Consequently, this Court holds that Plaintiff has provided enough evidence to support the third element of supervisory sexual harassment.
Fourth, the Court finds that Bateman's alleged harassment was sufficiently severe or pervasive as to affect a term, condition or privilege of Plaintiff's employment. As in Phillips, "[b]both the physical nature of the incidents and their very number convince this Court that the plaintiff's working environment was significantly affected." 83 F.Supp.2d at 1033. "Factors to consider when determining whether sexual harassment is sufficiently severe or pervasive include: `the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Hocevar, at 750 (quoting Harris 510 U.S. at 23, 114 S.Ct. 367). Plaintiff testified in her deposition that Bateman frequently talked about her and her husband's sexual life, asked Plaintiff if she wanted to join in "sex orgies," "threesomes," and other sexual acts, and asked Plaintiff if she wanted to watch pornographic movies. In addition, Plaintiff testified that Bateman repeatedly touched her buttocks and her breasts. Plaintiff also testified that on December 30, 1998, Bateman asked Plaintiff if she and husband wanted to stay with Bateman and her husband in a hotel room for New Year's Eve and have a "big orgy." During Bateman's tenure as her direct supervisor, Plaintiff testified that Bateman told Plaintiff that she would have to perform oral sex on Bateman to get a raise. Further, Plaintiff testified that on January 8, 1999, when Plaintiff and her husband came to work to get her paycheck, Bateman approached them and commented on what they could do in a pornographic movie together. The Court finds that these unwelcome sexual encounters with Bateman were sufficiently severe and persuasive to alter the conditions of Plaintiff's employment and create a hostile working environment.
Defendant challenges Plaintiff's allegations by stating that her claim fails as matter of law because she has failed to proffer sufficient evidence that she suffered severe or persuasive conduct which she subjectively deemed sexually harassing. This conclusory statement is not supported by the facts of this case, and Defendant's profered legal analysis is inapposite to the Supreme Court's decisions. Conduct that is considered sexual harassment must "be both objectively and subjectively offensive, one a reasonable person would find hostile or abusive, and one the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). "Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well being, but the statute is not limited to that conduct." Harris, 510 U.S. at 22, 114 S.Ct. 367. "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it to also be psychologically *1124 injurious." Id. In the action before the Court, Plaintiff found the work environment not only to be hostile and abusive, but Plaintiff further indicated that it was so psychologically injurious she was unable to attend work on some days. It is undisputed that she felt compelled to report Bateman's conduct to a manager. Furthermore, a reasonable person would find the conduct of Bateman to be hostile and abusive. For these reasons, the Court concludes that Plaintiff has made an adequate showing that she suffered severe or persuasive conduct which both she and a reasonable person would deem as sexually harassing.
Defendant further argues that Plaintiff does not have sufficient evidence of sexual harassment by a supervisor because Bateman was Plaintiffs co-employee for the vast majority of Plaintiff's employment. Defendant correctly recognizes that there are different standards for co-worker harassment and supervisory harassment:
In order to establish a claim of hostile work environment sexual harassment by non-supervisory co-workers, a plaintiff must establish that (a) she belongs to a protected group; (b) that she was subject to unwelcome sexual harassment; (c) that the harassment was based on sex; (d) that the harassment affected a term, condition, or privilege of employment; and (e) that the employer knew or should have known of the harassment and failed to take the proper remedial action.
Scusa v. Nestle U.S.A. Co., Inc. 181 F.3d 958, 965 (8th Cir.1999). However, the fact that Bateman allegedly sexually harassed Plaintiff while she was a co-worker does not prohibit Plaintiff from later bringing a claim against Bateman for sexual harassment that allegedly occurred while Bateman was her supervisor. In her Complaint, Plaintiff alleges that the hostility of the work environment increased once Bateman became her direct supervisor. As detailed supra, Plaintiff alleges that when Bateman was her supervisor she asked Plaintiff if she wanted to join in "sex orgies," "threesomes," and other sexual acts and repeatedly touched her buttocks and her breasts. Plaintiff also alleges that Bateman conditioned Plaintiff's advancement on participation in a sexual act. This Court must apply the standard for supervisory sexual harassment and not co-worker sexual harassment since Bateman was her supervisor when these acts allegedly occurred.[4] Consequently, Plaintiff does not carry the additional burden of proving "that the employer knew or should have known of the harassment and failed to take proper remedial action," as Defendant suggests. Id.
For the foregoing reasons, the Court finds that Plaintiff has demonstrated *1125 the existence of a hostile work environment of sexual harassment. However, this showing does not necessarily entitle her to present her claims to the jury, unless she can establish that Defendant is responsible for the harassment she suffered. In a case such as this one, an employer is subject to vicarious, or strict, liability when a hostile environment is "created by a supervisor with immediate or successively higher authority" over the employee. See Burlington, 118 S.Ct. at 2270; Faragher, 118 S.Ct. at 2292-93. If the employer takes no tangible employment action against the employee, notwithstanding a supervisor's creation of a hostile work environment, the employer may "raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence."[5]Id. Defendant can provide such an affirmative defense by showing that (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the employee unreasonably failed to utilize any preventive or corrective activities provided by the employer or to avoid harm otherwise. Faragher, 118 S.Ct. at 2293; Burlington Indus., 118 S.Ct. at 2270.
Defendant argues that it has established such an affirmative defense. Defendant claims that its strict policy against sexual harassment and its reasonable care to correct the alleged sexual harassment meets the first prong of the test. The Court finds that Defendant did maintain a sexual harassment policy at the store where Plaintiff was employed. However, a factual dispute exists as to whether Defendant took reasonable care to prevent and promptly correct any sexually harassing behavior. In particular, the Court finds that the differing accounts by Plaintiff and Defendant regarding the steps Arlan took after Plaintiff presented her letter detailing Bateman's alleged actions create a factual dispute as to this issue. According to Defendant, Arlan talked to Bateman within twenty-four hours of his first meeting with Plaintiff; the harassment promptly stopped; and Plaintiff did not express dissatisfaction with Defendant's actions, state that she could not work with Bateman, or complain that Bateman had retaliated against her. To the contrary, Plaintiff declares that Arlan did not act on her complaints about Bateman until she went to see him again one day after giving him the letter. Plaintiff claims that after being counseled regarding Plaintiff's charges, Bateman retaliated against her, and that when Plaintiff told Arlan and requested not to work for Bateman, he informed her that nothing could or would be done to alleviate these problems. Viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude that Defendant promptly and effectively corrected Bateman's sexually harassing behavior. Even if the sexual harassment itself stoppeda point about which there is no disagreement Plaintiff's version of events indicates that she continued to encounter significant difficulties working for Bateman and that *1126 her complaints about these difficulties went unaddressed, leading Plaintiff to miss work because of the distress this situation caused her. See Ponticelli v. Zurich American Ins. Group, 16 F.Supp.2d 414, 431 (S.D.N.Y.1998) (noting that factual dispute remains in regards to reasonableness of employer's action when, among other things, plaintiff claimed that "her complaints of harassment were not adequately investigated and promptly corrected").
Additionally, the Court finds that Defendant has not proven the second prong of the affirmative defensethat Plaintiff unreasonably failed to utilize any preventive or corrective activities provided by Defendant or to avoid harm otherwise. The Court believes that Plaintiff has set forth sufficient evidence to demonstrate that she took advantage of the preventative and the corrective opportunities provided by Defendant. Plaintiff prepared a letter fully describing Bateman's alleged sexual harassment and handed it to Arlan. Additionally, Plaintiff met with Arlan to discuss the harassment. Although Plaintiff's reporting of the harassment did not immediately follow the alleged incidents of sexual harassment, the Court believes that the actions Plaintiff did take are sufficient to create a factual dispute as to whether she reasonably utilized the corrective mechanisms provided by Defendant.
Defendant relies upon Phillips in arguing that Plaintiff failed to take advantage of any preventative or corrective opportunities provided by the employer or otherwise to avoid the harm. Phillips, 83 F.Supp.2d at 1034. The Court disagrees with Defendant that Phillips supports its argument. In Phillips, the Court expressly limited "its findings under the second prong of the affirmative defense to the facts of this case." 83 F.Supp.2d at 1034 n. 3. The court continued, "A delay of three months and seven days between the first incident of harassment and a plaintiff's first complaint of harassment may not alone prove that the plaintiff employee unreasonably failed to take advantage of any protective or corrective opportunities provided by the employer or to avoid harm otherwise." Id. In the action before this Court, the circumstances of the alleged harassment and retaliation are too dissimilar to compare to the limited holding of Phillips. Id. Consequently, the Court finds that Defendant's argument fails.
Defendant also relies on Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 737 F.Supp. 1070 (E.D.Mo.1990), to support its claim of an affirmative defense. In Caleshu Plaintiff "did not lodge a complaint with defendant management until January 8, 1985, almost five months after the harassment apparently commenced." Caleshu, 737 F.Supp. at 1083. However, this fact alone was not the sole basis for the court's decision to absolve the employer from liability. The reassignment of Plaintiff and other remedial actions which the employer took were all factors in the court's decision in Caleshu. Id. In contrast to the instant action, when the plaintiff in Caleshu complained to her managers of sexual harassment, they moved her as far away as was physically possible from the harassing employee and reassigned her to another position. Id. Additionally, Caleshu was decided eight years before the affirmative defense for Defendant's liability was established by the Supreme Court in Faragher, 524 U.S. at 807, 118 S.Ct. 2275. For these reasons the Court does not believe that Caleshu supports Defendant's assertion of an affirmative defense. Id.
Finding the existence of genuine issues of material fact as to both prongs of Defendant's affirmative defense, the Court holds that Plaintiff's hostile environment sexual harassment claims against Defendant survive summary judgment and shall be presented to the jury.

B. Plaintiff's Claim of Retaliation
Plaintiff contends that Bateman retailed against her through rude comments and threats to take disciplinary action against her as well as a verbal reprimand. Plaintiff also claims that Defendant *1127 retaliated against her by terminating her from her employment. In order for Plaintiff to establish a prima facie retaliation claim, she must show that (1) she engaged in statutorily protected activity or filed a charge of harassment; (2) Defendant took an adverse employment action against her; and (3) a causal connection exists between the adverse employment action and the protected activity. Hocevar, at 751; Scusa, 181 F.3d at 968; Smith v. Riceland Foods, 151 F.3d 813, 818 (8th Cir.1998); Stevens v. St. Louis Univ., Med. Ctr., 97 F.3d 268, 270 (8th Cir.1996). The Court believes that Plaintiff has set forth a prima facie case of retaliation under this standard.
In the action before the Court, it is not disputed that Plaintiff filed charge of sexual harassment; therefore, she has established the first element of a retaliation claimthat she had engaged in a protected activity or file a charge of harassment.
The second element of a retaliation claimwhether Defendant took an adverse employment action against Plaintiffis contested by the parties. In general, the Eighth Circuit has held that actions falling short of termination can constitute adverse actions, but not all actions that make employees unhappy are actionable adverse actions. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.1997). Plaintiff alleges that Bateman was very rude and threatened to take disciplinary action against her. A plaintiff's general contention that hostility and personal animus was directed toward them by their supervisors is not a material employment disadvantage. Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997). Absent evidence of some more tangible change in duties or working conditions, these allegations are not sufficient to establish an adverse employment action.
Plaintiff also alleges that Bateman verbally reprimanded her in front of Rees after Plaintiff had filed her harassment claim. Plaintiff cites Scusa[6] to support her assertion that a reprimand is a material disadvantage in the work place. Scusa, 181 F.3d at 969-670. A material disadvantage is a decrease in title, salary or benefits. Id. at 969 (citing Lyoch v. Anheuser-Busch Cos., 139 F.3d 612, 616 (8th Cir.1998)). "Employment actions that were adverse enough to sustain a retaliation claim include tangible change in duties or working conditioned that constituted a material employment disadvantage or ultimate employment decision such as termination, demotion, reassignment, but not merely hostility, disrespect or ostracism." Id. (citing Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir.1997)). As detailed supra, Scusa provides several examples of material disadvantages. Id. However, Scusa does not specifically or generally indicate that a reprimand is a tangible change. Id. In Sims v. Health Midwest Physician Services Corp., the Eighth Circuit held that even a written warning received after a verbal reprimand is not sufficient to be characterized as a material disadvantage for a Title VII retaliation claim. Sims, 196 F.3d 915, 921 (8th Cir.1999). For these reasons, the Court rejects Plaintiff's assertion that a verbal reprimand is an adverse employment action.
Plaintiff further alleges that her termination was a result of retaliation. "Typically, it is obvious whether an employer took adverse employment action when, for example, the employee has been terminated or discharged." Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir.1997). Accordingly, the Court finds that Plaintiff has *1128 established that Defendant took an adverse employment action against her when it discharged her from her employment.
The last element of a retaliation claim is a causal connection. In Couty v. Dole, the Eighth Circuit held that there was sufficient evidence to support a finding of a causal relationship between Plaintiff's protected conduct and his discharge. Couty, 886 F.2d 147, 148 (8th Cir.1989). The plaintiff in Couty was terminated within thirty days of his protected conduct. Id. This short interlude permits an inference of causation. Id. In Keys v. Lutheran Family & Children Services of Missouri, the Eighth Circuit held that there was a sufficient causal connection when the period was less than two months. Keys, 668 F.2d 356, 358 (8th Cir.1981). Plaintiff brought her claim on January 28, 1999 and was terminated no later than February 15, 1999. Since this period is less than one month, the Court finds that Plaintiff has met the burden of proof for a causal connection. For the foregoing reasons, the Court finds that Plaintiff has submitted a prima facie case of retaliation.
Under the three-step McDonnell Douglas Corp. v. Green burden-shifting scheme, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Vaughn v. Roadway Express, Inc., 164 F.3d 1087, 1089 (8th Cir.1998), after the plaintiff presents a prima facie case of discrimination, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to rebut this presumption through the articulation of a legitimate, nondiscriminatory reason for the employment action. Id. (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Defendant asserts that Plaintiff was fired for violating Defendant's attendance policy. During his deposition, Arlan testified that he had counseled Plaintiff on several occasions about her failure to follow attendance policies. The Court finds that this evidence is adequate to constitute Defendant's showing of a legitimate, nondiscriminatory reason for Plaintiff's termination from the company. Because Defendant has advanced a nondiscriminatory reason for its employment action, the presumption created by Plaintiff's prima facie case disappears, leaving her with the burden of proving that Defendant's stated reason is a pretext for intentional discrimination. Reeves v. Sanderson Plumbing Products, Inc., ___ U.S. ___, ___, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).
Turning to Plaintiff's burden, the Court finds that the evidence presented in support of her prima facie case of retaliation is also sufficient to create a factual dispute as to whether Defendant's nondiscriminatory reason is a pretext for retaliation. Defendant argues that Plaintiff has provided no evidence to support her claim that she was terminated because she complained about sexual harassment or that Defendant's legitimate non-discriminatory reason for her termination was a pretext for retaliation. Plaintiff does not need to disprove all possible reasons for her discharge, she only needs to offer sufficient evidence to support a reasonable inference that she was terminated because of her protected activity. EEOC v. HBE Corp., 135 F.3d 543, 555 (8th Cir.1998). The fact that Defendant offered evidence of a legitimate motive does not change this standard since the jury may weigh the evidence and reject such evidence as pretextual. HBE Corp., 135 F.3d at 555.
Defendant particularly stresses the fact that Plaintiff admits that she violated Defendant's attendance policy with her unexcused absences from work. The Court is not persuaded that this admission is fatal to Plaintiff's retaliation claim. Rather, as relevant case law emphasizes,
It is not necessary that the actual termination decision be motivated by discriminatory animus. If the decision making process is tainted by discrimination, the claimant is entitled to relief. When an employee is fired because he acted to defend himself against harassment, *1129 which supervisors failed to take reasonable measure to prevent or correct, the termination cannot be said to be free from discrimination.
Excel Corp. v. Bosley, 165 F.3d 635, 639 (8th Cir.1999). See also DeGrace v. Rumsfeld, 614 F.2d 796, 804 (1st Cir.1980) (finding that plaintiff could prevail on Title VII claim by establishing that his absences were caused by the offensive conduct of his fellow employees). In this case, Plaintiff's deposition testimony indicates that although she notified Arlan that Bateman was treating her badly after Plaintiff reported her sexual harassment and told Arlan that she did not believe that she should be required to work with Bateman, Arlan told her that the company would not do anything to address these problems. Plaintiff testified that as a result of Arlan's refusal to intervene in what Plaintiff believed was an untenable situation, Plaintiff became physically ill from her distress and missed work. Plaintiff further testified that because she did not have health insurance, she could not afford to see a doctor to procure the doctor's note which Defendant required in order to excuse these absences. The Court believes that these circumstances raise a factual dispute as to whether Plaintiff's termination was tainted by discrimination. If Defendant's refusal to effectively remedy supervisory sexual harassment played a significant part in causing the absences for which Defendant ultimately discharged Plaintiff, the Court finds that Defendant cannot shield itself with the assertion that Plaintiff indeed violated the company's absence policy. Furthermore, the close temporal relationship between Plaintiff's reporting of the alleged sexual harassment and Defendant's firing, discussed supra, also creates a genuine issue of material fact as to whether Defendant's nondiscriminatory reason is a pretext for retaliatory conduct. For the foregoing reasons, the Court shall deny Defendant's motion for summary judgment.
Accordingly,
IT IS HEREBY ORDERED that Defendant Dillard's Inc.'s Motion to Strike [document #40] is GRANTED.
IT IS FURTHER ORDERED that Defendant Dillard's Inc.'s Motion for Summary Judgment [document #32] is DENIED.
NOTES
[1] Because federal employment discrimination decisions are applicable and authoritative under the MHRA, Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir.1994), the Court shall analyze Anderson's Title VII and MHRA claims jointly.
[2] Fitzgerald was to assume the job of Operations Manager at the Jamestown Dillard's on February 1, 1999.
[3] "A plaintiff cannot create a genuine issue of material fact with regard to unwelcome behavior when she engages in the conduct complained about." Id. at 749.
[4] The Court is not persuaded by Defendant's argument that Plaintiff has failed to demonstrate that Bateman was her supervisor because she has not offered any evidence that Bateman had supervisory authority over her. Defendant correctly notes that federal courts have defined supervisory status as having the authority to hire, fire, demote, promote, transfer, or discipline an employee. See Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1034 (citing cases). In support of its contention that Bateman was not Plaintiff's supervisor, Defendant offers Arlan's affidavit, in which he states that ASM's do not have authority over compensation, raises, or discipline of the sales associates who report to them. Plaintiff does not dispute this statement. However, Plaintiff stated in her deposition that shortly after Bateman had become ASM of Plaintiff's department, Bateman told her that Bateman and her husband had decided that Plaintiff would "have to lick her pussy to get a raise." Pl. Dep. at 107. Plaintiff further testified that because Bateman wrote her performance reviews, Plaintiff believed that Bateman did have influence over her ability to get a raise. Additionally, Plaintiff testified that after Bateman had been reprimanded for sexually harassing Plaintiff, Bateman warned Plaintiff that further disrespect could result in her termination. Plaintiff's testimony raises a factual dispute as to whether Bateman purported to have supervisory authority over Plaintiff. Because Bateman's alleged use of her position to sexually harass Plaintiff is precisely the kind of abuse of power that supervisor sexual harassment case law addresses, the Court shall treat Bateman as Plaintiff's supervisor for the purposes of this summary judgment decision.
[5] Plaintiff urges the Court to find that the Faragher affirmative defense is not available to Defendant as to Plaintiff's claim for supervisor sexual harassment under the MHRA because of the Missouri Court of Appeals's holding in Pollock v. Wetterau Food Distribution Group that employers are strictly liable for the discriminatory actions of supervisors regardless of whether the actions of the harasser were authorized or forbidden. 11 S.W.3d 754, 767 (Mo.Ct.App.1999). Defendant argues that this Missouri Court of Appeals opinion was wrongly decided and, because it does not represent the opinion of the state's highest court (which denied an application for transfer on March 21, 2000), is not binding on this federal court. No published case has addressed the question of the applicability of Pollock to federal decisions on MHRA claims. Nevertheless, this Court's resolution of this interesting issue is not necessary in this case because its finding, infra, that issues of fact remain concerning Defendant's affirmative defense to Plaintiff's sexual harassment claims leaves Defendant, for the purposes of these pending motions, in the same position as to these claims under both Title VII and the MHRA; that is, strictly liable for the actions of its supervisory employee. See Faragher, 118 S.Ct. at 2275; Burlington Indus., 118 S.Ct. at 2257.
[6] Defendant cites Scusa in support of its argument that Plaintiff suffered no retaliatory action during employment. Scusa, 181 F.3d at 968. Scusa is not persuasive in this case since Plaintiff alleges that it was supervisory employees and not a co-workers who were retaliating against her. Id. The retaliation claim in Scusa was "not based on retaliation by supervisory employees" rather it was a claim based upon hostility from co-workers. Id. Retaliation by supervisory employees and retaliation by co-workers are too unlike to be interchanged.